*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCAP-24-0000819
22-JUL-2026
09:10 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

MAUI TOMORROW FOUNDATION,
Plaintiff-Appellee,

vs.

MAUI PLANNING COMMISSION, COUNTY OF MAUI;
and COUNTY OF MAUI,
Defendants-Appellants.

SCAP-24-0000819

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-24-0000819; CIVIL NO. 2CCV-24-0000845)

JULY 22, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ.,
AND CIRCUIT JUDGE WONG, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY EDDINS, J.

**I.**

Efficiency is important in government.  But it cannot come at the cost of bedrock duties.  And it certainly cannot override the commitments the State and counties share to conserve and

protect Hawai'i's natural resources, in trust, for present and future generations.

The Coastal Zone Management Act (CZMA) carries that promise into law. The Maui County Planning Commission (MPC) violated the CZMA when it recently promulgated amended rules to govern Maui's Special Management Area (SMA). It placed administrative convenience ahead of the public trust.

Hawai'i's shoreline is among the State's most sensitive natural resources. The CZMA protects it through the SMA, a statutory zone extending inland from the coast in every county. The CZMA directs the counties to administer that zone. They stand between the shore and harmful development.

This obligation is non-delegable, grounded in statute and the Hawai'i Constitution. It safeguards what cannot be replaced.

MPC's amended rules, however, stripped oversight and procedural safeguards from SMA permitting review. In the name of reducing workload, MPC delegated its duty to assess potential environmental harm to the regulated parties themselves. Yet the assessment duty is not MPC's to give away. Maui County holds coastal resources in trust under article XI, section 1 of the Hawai'i Constitution, and cannot delegate its trust responsibilities by rule.

Circuit Court of the Second Circuit Judge Kirstin Hamman invalidated key portions of MPC's amended rules to restore the assessment process MPC had dismantled.

We affirm.

## II.

The Coastal Zone Management Act, Hawai'i Revised Statutes (HRS) chapter 205A, established Special Management Areas along the coastlines of Hawai'i's counties.  Maui County's SMA is the one at issue here.

The CZMA created SMAs to protect, preserve, and restore coastal ecosystems and historic resources.  See HRS § 205A-2 (2017 & Supp. 2021).

No "development" in the SMA may proceed without a permit. HRS § 205A-28 (2017).  The CZMA defines "development" as any of the following "uses, activities, or operations on land or in or under water within a special management area":

> (A) Placement or erection of any solid material or any gaseous, liquid, solid, or thermal waste;
>
> (B) Grading, removing, dredging, mining, or extraction of any materials;
>
> (C) Change in the density or intensity of use of land, including but not limited to the division or subdivision of land;
>
> (D) Change in the intensity of use of water, ecology related thereto, or of access thereto; and
>
> (E) Construction, reconstruction, or alteration of the size of any structure[.]

HRS § 205A-22 (2017 & Supp. 2023).

3

Recent amendments preserve these five "development" categories for Maui County.  See An Act Relating to the Coastal Zone Management Act, 2026 Haw. Sess. Laws Act 70 (retaining the categories for "counties with a population between one hundred fifty thousand and two hundred thousand").

This definition excludes certain subcategories of activities (for example, road maintenance and trash removal), unless the authority finds that an excluded activity may have a "cumulative impact, or a significant environmental or ecological effect" on the SMA.  Id.; see Act 70 (adding an exclusion for federal, state, and county-funded projects "exempt from an environmental assessment or for which a finding of no significant impact has been issued under [HRS] chapter 343").

MPC administers the permit application process within Maui County's SMA, "consistent with the objectives, policies, and special management area guidelines" provided in HRS chapter 205A.  HRS § 205A-29 (2017 & Supp. 2021).

In August 2024, MPC enacted amended SMA rules in Maui County (the amended rules).

Three sections of the amended rules matter here.

First, the amended rules created a list of fifteen activities categorically exempt from the definition of "development" in the CZMA.  Maui County Code (MCC) § 12-202-11.1 (as amended Aug. 25, 2024).  These exclusions have some

4

similarities to those in the CZMA, though not all categories of excluded activities overlap (for example, scientific testing involving excavation is excluded in the amended rules, but not the CZMA). The amended rules also tag dollar figures to several exemptions (for example, nonstructural exterior renovation is exempt if the cost stays under $500,000). MCC § 12-202-11.1(k). The CZMA contains no such thresholds.

The CZMA's exemptions all remain conditional on environmental review. HRS § 205A-22. The legislature kept its exclusions conditional. The County reversed course. Its amended rules declared the listed uses to have no "significant environmental or ecological effect on the special management area." MCC § 12-202-11.1. They are definitionally exempt from any SMA permit requirement. Id.

For some of the fifteen exempt activities, the landowner must submit a publicly accessible declaration establishing appropriate use restrictions. Id. (exemptions k, l, and m). MPC does not review or respond to any filed declarations. Id. And for any uses outside those carve-outs, no submission is required. Id.

Second, the amended rules excluded the continuation, repair, or renovation of any development that fell within "the same scope" of an already-approved development. MCC § 12-202-11.2 (as amended Aug. 25, 2024). The rules do not define "same

5

scope." Nor do they say who decides that definition. Thus, one approval exempts everything that follows from it. No further assessment. Just the landowner's say-so.

And third, the amended rules eliminated the requirement that a development application include a final environmental assessment (EA). MCC § 12-202-12 (as amended Aug. 25, 2024).

**III.**

After the amended rules took effect, Maui Tomorrow, a nonprofit environmental advocacy organization, filed a complaint in the Circuit Court of the Second Circuit challenging the rules. Maui Tomorrow soon moved for summary judgment.

Maui Tomorrow's argument turned on a distinction between the CZMA's "assessment" and "permitting" processes.

The CZMA mandates a three-step assessment established in Leslie v. Bd. of Appeals of Cnty. of Hawai'i, 109 Hawai'i 384, 126 P.3d 1071 (2006), to determine whether a proposed SMA use qualifies as a "development" requiring a permit. The third step requires evaluating environmental impact. HRS § 205A-22.

The CZMA authorizes counties to streamline permitting procedures. See HRS § 205A-29. But nothing in the CZMA allows them to bypass the assessment that determines whether permitting is needed in the first place.

6

The amended rules, Maui Tomorrow maintained, do not just streamline permitting. They eliminate MPC's role in assessment. And they hand that role to the very parties under review.

MPC countered that the exempted activities were not "developments" in the first place. Thus, they fall outside the three-step process entirely. MPC insisted the amended rules reflected a legitimate exercise of its rulemaking authority. The legislature intended to give the counties the ability to create these exemptions, it said. It warned that Maui Tomorrow's reading of the CZMA would require the Commission to assess every activity in the SMA, down to a child's sandcastle.

The circuit court sided with Maui Tomorrow, granting summary judgment. It took judicial notice of the SMA rules for the counties of Honolulu, Kaua'i, and Hawai'i, noting that none have interpreted the CZMA to allow categorical exemptions from CZMA assessment, as Maui County's amended rules do.

The circuit court's original order invalidated the amended rules in their entirety. After a motion for clarification from MPC, the circuit court narrowed its ruling, striking the categorical exemptions (deleting MCC §§ 12-202-11.1 and 11.2) and restoring the final EA requirement (revising MCC § 12-202-12(c)).

MPC and Maui County appealed to the Intermediate Court of Appeals. Then they applied for transfer to this court.

We granted transfer.

**IV.**

The circuit court was right.

**A.    MCC § 12-202-11.1's Categorical Exemptions**

MCC § 12-202-11.1 created fifteen categorical exemptions from the three-step assessment.  These exemptions exceeded MPC's statutory authority under the CZMA.

"Administrative rules and regulations which exceed the scope of the statutory enactment they were devised to implement are invalid and must be struck down."  Asato v. Procurement Policy Bd., 132 Hawai'i 333, 346, 322 P.3d 228, 241 (2014) (internal citations omitted); see HRS § 91-7(b) (2012 & Supp. 2015) ("The court shall declare the rule invalid if it finds that it . . . exceeds the statutory authority of the agency[.]").  Agencies may exercise implied powers, but only so long as they are "reasonably necessary to carry out the powers expressly granted."  Asato, 132 Hawai'i at 347, 322 P.3d at 242 (internal citation omitted).  An administrative rule cannot contradict or conflict with the statute it implements.  Id. (quoting Agsalud v. Blalack, 67 Haw. 588, 591, 699 P.2d 17, 19 (1985)).

MCC § 12-202-11.1 contradicts the CZMA.  It exempts whole categories of activity from the three-step assessment.  That process is how the CZMA determines whether an activity needs a

8

permit. Taking it away erases the test the CZMA uses to identify "development." The rule also shifts the assessment to private parties. This clashes with the statutory requirement that the "authority" conduct the review. Either failure alone would exceed Maui County's rulemaking power. Together, they doom the exemptions.

The delegation defect also violates the Hawai'i Constitution. It collides with Maui County's non-delegable obligation to protect and conserve Hawai'i's natural resources. See Haw. Const. art. XI, § 1; Ka Pa'akai O Ka 'Aina v. Land Use Comm'n, State of Hawai'i, 94 Hawai'i 31, 52, 7 P.3d 1068, 1089 (2000).

### 1. MCC § 12-202-11.1 Contradicts the CZMA and Leslie

The CZMA's purpose includes protecting, preserving, and restoring natural and manmade historic and prehistoric resources, valuable coastal ecosystems, coastal scenic and open space resources, and beaches and coastal dunes. HRS § 205A-2.

Planning commissions must find that *any* proposed SMA development is consistent with the CZMA's policies and objectives before permitting it. HRS § 205A-26(2)(B) (Supp. 2021); Alaloa v. Planning Comm'n of Maui Cnty., 68 Haw. 135, 136, 705 P.2d 1042, 1043 (1985).

This requirement carries a strict prohibition. No development in the SMA without a permit. HRS § 205A-28. Nor

9

may any agency authorize SMA development until proper procedures have been followed and approval has been granted. HRS § 205A-29.

The CZMA designates the "special management area authority" as responsible for establishing the permit application process "consistent with the objectives, policies, and special management area guidelines" of HRS chapter 205A. HRS §§ 205A-22, 205A-29. For Maui County, that authority is the Maui Planning Commission. So MPC's role includes establishing rules for permit application procedures, hearing conditions, and adequate notice. HRS § 205A-29.

MPC's authority is to administer permitting, not to lift activities from the CZMA's coverage.

In other words, streamlining permitting doesn't include sidestepping the assessment function. Assessment determines *whether* an activity is a "development." Permitting governs *how* an approved development may proceed. Counties may adopt procedures for permitting. HRS § 205A-29. They may not skip the assessment that determines whether permitting is required in the first place.

Under Leslie, the assessment inquiry proceeds in three steps: (1) determine whether the activity is included in the statutory definition of "development"; (2) if it is, determine whether the activity falls into one of the specifically excluded

categories of activities; and (3) if it is an excluded use, determine whether it may still have a "cumulative impact or significant environmental or ecological effect on a special management area" – and if so, the activity is a "development" all the same.  109 Hawai'i at 396-97, 126 P.3d at 1083-84.

MPC insists that its excluded uses are not "developments" and therefore fall outside the three-step assessment.  MPC is wrong.

The CZMA defines "development" broadly.  HRS § 205A-22 (set out above).  All but one of the fifteen activities included in § 12-202-11.1 of the amended rules fall into at least one of the five enumerated categories — placement of material, grading and extraction, changes in land use, changes in water use, or alteration of any structure.  (We address the single outlier, exemption (j), later on.)

These categories cover wide ground.  The legislature designed them to capture most uses in the SMA.  MCC § 12-202-11.1 exempts activities the CZMA never meant to exclude.

Because the CZMA aims to prevent "substantial adverse environmental or ecological effects" on the SMA, the impact analysis drives every assessment.  See Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 365–66, 773 P.2d 250, 254 (1989).  Under the CZMA's definition of "development," most SMA uses run through the three-step

11

assessment.  Step 3 evaluates environmental impact.  Unless the authority finds no environmental harm, a permit is required. See id.

MPC protests that requiring assessment of these activities leads to absurd results.  It imagines a world where the Commission would have to screen every beachgoer, every sandcastle builder, every tourist on Hawai'i's beaches.

This argument conflates *assessment* with *permitting*, and breadth of *coverage* with breadth of *burden*.

Step 1 of the Leslie framework already sifts out the activities Maui County claims would be swept in.  Building a sandcastle does not involve "[g]rading, removing, dredging, mining, or extraction of any materials."  HRS § 205A-22.  A beach cleanup is not "[c]onstruction, reconstruction, or alteration of the size of any structure."  Id.  These activities fail Step 1 on their face.  They are non-developments.  The inquiry ends there.

Consider what MPC actually exempted.  Agricultural grading, utility infrastructure installation, exterior building modifications, site improvements to previously developed land. See MCC § 12-202-11.1.  These activities *do* fall within the statutory definition of "development."  They involve the placement of solid materials, the extraction of materials, or

the construction and alteration of structures.  That's why they require assessment.

The Leslie framework does that sorting.  Not to subject sandcastles to permitting, but to ensure that activities with real environmental consequences do not escape review.

Take two examples.  Under the three-step process, a child building a sandcastle would be screened out at Step 1.  A developer grading a coastal parcel for agriculture would reach Steps 2 and 3.  And properly so.

MPC cannot rewrite the environmental protections the legislature built into the CZMA.  It cannot redefine "development" in a way that contradicts the statute.

The legislature codified narrow exclusions "to ease the burden of permit processing without compromising the intent of the coastal zone management program."  S. Stand. Comm. Rep. No. 174-84, in 1984 Senate Journal, at 1057-58 (emphasis added).  The legislature already did the balancing work.  The exclusions are narrow.  The environmental impact override catches what slips through.

Maui County claims power to create exceptions.  It cites the legislature's recognition that its own list of exemptions might prove incomplete.  The County noted the legislature said, "[i]f the exemptions . . . prove to be inadequate, the Legislature can make the necessary adjustments."  S. Stand. Comm

Rep. No. 936, in 1979 Senate Journal, at 1435. But Maui County disregards the operative word. The legislature said the *legislature* could make changes. Not the counties.

MPC also overlooks Step 3. Every legislative exemption remains subject to the CZMA's cumulative impact review. HRS § 205A-22. The CZMA says all excluded activities are *conditional* on doing no harm. MPC removed that buffer.

MPC overstates its authority. It may streamline permitting. It may not rewrite the definition of "development" that controls permitting.

One exclusion stands apart.

Exemption (j) covers: "[t]raditional native Hawaiian cultural practices that are conducted or led by native Hawaiian cultural practitioners and that do not have a detrimental environmental or ecological effect on the [SMA]." MCC § 12-202-11.1(j) (as amended Aug. 25, 2024).

Unlike the other fourteen exemptions, (j) preserves the environmental safeguard. The activity must not have a detrimental ecological effect on the SMA. Read in isolation, that language would not contradict the CZMA. But the right standard in the wrong hands fails. As discussed in section A.2 below, this exemption is invalid because it lets private parties apply the standard. A standard that no agency verifies is no standard at all.

Fourteen of the MCC § 12-202-11.1 exemptions are invalid on the contradiction ground.  The fifteenth – exemption (j) – gets the standard right but the reviewer wrong.

**2.    MCC § 12-202-11.1 Unlawfully Delegates its Assessment Role to Private Parties**

MCC § 12-202-11.1 also fails on a second ground.  It shifts MPC's assessment obligations to private parties.

The duty to protect Hawai'i's natural resources does not bend to administrative convenience.  These resources are held in trust for present and future generations.  The trustee cannot hand the keys to the regulated.

The CZMA puts the "development" assessment on the county planning commissions.  The "authority" must find that a proposed development (a) will not have any substantial adverse environmental or ecological effects; (b) is consistent with the objectives, policies, and guidelines of chapter 205A and (c) is consistent with the county general plan and zoning.  Sandy Beach Def. Fund, 70 Haw. at 365–66, 773 P.2d at 254 (citing HRS § 205A-26(2)).  And whenever the authority finds an excluded use may have cumulative impact, the statute requires that use to be treated as "development."  HRS § 205A-22.

The CZMA defines "[a]uthority" as the county planning commission.  That commission "may, as appropriate, delegate the

responsibility for administering this chapter." HRS § 205A-1 (2017 & Supp. 2021).

But this delegation power has limits.

Alaloa is instructive. The CZMA allows delegation to state or county agencies. It does not allow delegation to the regulated parties themselves. See Alaloa, 68 Haw. at 137, 705 P.2d at 1044. MPC may not delegate "its authority to determine whether a development complie[s] with the policies and objectives of the CZMA to the applicants for a special management area permit." Ka Pa'akai, 94 Hawai'i at 50, 7 P.3d at 1087.

In Alaloa, a developer applied for an SMA permit to build a condo project on Moloka'i. 68 Haw. at 136, 705 P.2d at 1043. MPC granted a permit conditioned on the developer completing further surveys and avoiding impact to significant archaeological sites. Id. at 136-37, 705 P.2d at 1044.

This court vacated that permit. Id. at 137, 705 P.2d at 1045. The permit left the compliance determination to the applicants themselves, contrary to the statutory command. Id. at 137, 705 P.2d at 1044. The CZMA placed that determination with the planning commission, not the applicant. Id.

The permit was unlawful because it delegated approval to an interested party. Id.; Kaleikini v. Yoshioka, 128 Hawai'i 53, 85, 283 P.3d 60, 92 (2012) ("[R]esolution of [Alaloa] turned on

16

the 'unlawful delegation of duty' to the developers."). Alaloa identified three problems with this delegation. First, the applicant has a financial interest in the outcome. See Alaloa, 68 Haw. at 137, 705 P.2d at 1044. Second, the applicant lacks the "expertise and objective criteria for granting or denying approval of the plans and construction of the development." Id. Third, the applicant is not bound to abide by the CZMA's objectives and policies – removing what binds the planning commission and other government decisionmakers. Id.

As in Alaloa, MPC here shifts its assessment to self-interested applicants. The amended rules exempt categories of uses, strip any review, and leave discretion to the regulated. The amended rules go further than the permit in Alaloa. There, MPC reviewed the permit and imposed conditions on the developer. Here, there is no MPC involvement for exempted uses.

Beyond the statute, this abandonment of discretion offends Maui County's constitutional duty to conserve and protect natural resources. Article XI, section 1 of the Hawai'i Constitution sets out the commitment:

> For the benefit of present and future generations, the State and its political subdivisions shall conserve and protect Hawai'i's natural beauty and all natural resources, . . . and shall promote the development and utilization of these resources in a manner consistent with their conservation and in furtherance of the self-sufficiency of the State. All public natural resources are held in trust by the State for the benefit of the people.

Few principles in Hawai'i law are more central to our constitutional inheritance than the public trust doctrine. See Kelly v. 1250 Oceanside Partners, 111 Hawai'i 205, 222, 140 P.3d 985, 1002 (2006) (calling it a "fundamental principle of constitutional law in Hawai'i").

The public trust doctrine binds this generation to honor what prior generations held, and to preserve Hawai'i's beauty and natural resources for generations yet to come. What article XI, section 1 commands stands above statute and rule. Both must yield to it. So must the legislature and the state and county agencies that wield delegated power.

The doctrine requires the State act as a "trustee." It must "take the initiative in considering, protecting, and advancing public rights in the resource at *every stage* of the planning and decision-making process." Id. at 231, 140 P.3d at 1011.

Maui County, as a political subdivision of the State of Hawai'i, has that same duty. See id. at 226, 140 P.3d at 1006. An agency acting as a trustee is "duty bound to demonstrate that it has properly exercised the discretion vested in it by the constitution and the statute." Carmichael v. Bd. of Land & Nat. Res., 150 Hawai'i 547, 566, 506 P.3d 211, 230 (2022) (internal citations omitted).

18

This duty cannot be farmed out.  See Ka Paʻakai, 94 Hawaiʻi at 52, 7 P.3d at 1089.  Ka Paʻakai held the State to its public trust duties in protecting traditional Native Hawaiian cultural practices.  The court warned of what happens when private parties are left to police themselves.  "After all, once a project begins, the pre-project cultural resources and practices become a thing of the past."  Id.

The same holds for preserving all natural resources.  Once a shoreline is gone, it's gone.

By delegating that discretion to others, Maui County fails its constitutional obligations.  It leaves Maui's most vulnerable ecosystems subject to "possible arbitrary and self-serving actions."  See id.  As Ka Paʻakai reasoned "[t]he power and responsibility" to determine environmental effects, and the "means to protect" the SMA "may not validly be delegated . . . to a private petitioner who, unlike a public body, is not subject to public accountability."  Id.

Thus, MCC § 12-202-11.1 exceeds the statute.  It also violates the Hawaiʻi Constitution.

Exemption (j) relating to Native Hawaiian cultural practices is no different.  The standard is sound.  The activity must not have a detrimental environmental or ecological effect.  But the process breaks down.  Under the amended rules, the practitioner – not the Commission – decides whether the activity

19

has a detrimental effect.  This is the structural flaw that dooms the other fourteen exemptions.  The right question gets asked.  The wrong entity answers.

A standard nobody checks is an honor system applied to environmental regulation.  The CZMA requires more.

The delegation also gives shelter to bad faith developers. Before the amended rules, an SMA landowner who sidestepped assessment risked civil penalties.  They might try to slip through with an environmentally disruptive use.  But if caught, the consequence was clear.  See MCC § 12-202-25.

The amended rules now provide cover.  A landowner may claim a good faith belief that their use falls into one of the excluded categories.  That discretion lets them wave through environmentally destructive decisions.

Bad actors will always operate within an SMA.  But MPC's amended rules make oversight and enforcement significantly harder.

The circuit court properly invalidated MCC § 12-202-11.1 in full.

**B.   MCC § 12-202-11.2 Contradicts the CZMA's "Whenever" Mandate**

The CZMA provides that "whenever the authority finds" an excluded use may have a cumulative impact, that use shall be defined as a "development."  HRS § 205A-22.  "Whenever" signals a continuing duty.

But MCC § 12-202-11.2 of the amended rules provides that any actions in the SMA "previously determined to be exempt" could be "continued, renovated, or repaired in a manner that falls within the same scope of the prior exemption or permit."

Thus this section suffers from a distinct problem. It eliminates the CZMA's requirement that the "authority" assess cumulative environmental impacts as they emerge.

Environmental conditions change. Cumulative effects build over time. What was safe a decade ago may not be safe today.

MCC § 12-202-11.2 freezes the assessment in place. A single prior approval becomes permanent permission. Renovations and expansions count as continued use, so long as they fall within the "scope" of the original approval. The applicant decides what "scope" means. The applicant grades its own test. No agency asks whether cumulative impacts have emerged in the intervening years. No one verifies whether changed conditions have altered the environmental picture.

The provision contradicts the CZMA's "whenever" mandate.

For Maui County, the legislature recently amended this mandate to "if the authority finds" a cumulative impact or environmental effect. See Act 70 (emphasis added). The wording shifted. The duty did not. The county's public trust obligations require the same finding.

The delegation provision sets up an end-run. An interested party can secure a limited approval, then expand under the rule into more disruptive activity within the original's "scope." Under the amended rules, the authority will not find cumulative impact because it does not have to re-examine the existing approval. That is the conflict, and it is dispositive.

MCC § 12-202-11.2 could not stand. The circuit court struck it. We affirm.

**C. MCC § 12-202-12(c) Substitutes Draft EAs for Final Ones**

MCC § 12-202-12(c) sets out what an assessment application must include. Subsection (11) requires an environmental assessment. The amended rules ask for only a "draft" EA, not a final EA. MCC § 12-202-12(c)(11) (as amended Aug. 25, 2024).

The circuit court struck the word "draft" from § 12-202-12(c)(11). It restored the final EA requirement.

MPC's amended EA rule raises a different concern from the categorical exemptions. The question is not whether environmental review occurs, but on what information it relies. The EA is how MPC completes its environmental review. A *draft* EA, by definition, is unfinished. The applicant can change it at any time before completion. Maui County does not dispute this.

22

MPC would analyze environmental impact on a document the applicant can redo.  That is not assessment.  That is hope and guesswork.

The procedural changes erode environmental protections. "[T]he procedural and informational requirements" are "at the heart" of Hawai'i's Environmental Policy Act (HEPA), HRS chapter 343.  Kepo'o v. Watson, 87 Hawai'i 91, 100, 952 P.2d 379, 388 (1998).  These requirements also serve the CZMA's objective to "facilitate public participation in the planning and review process[.]"  HRS § 205A-2(c)(7)(C).

Final EAs require public review and comment periods, and substantial agency oversight.  HRS § 343-5 (2022).  Draft EAs require neither.  Worse, the amended rules describe no process for accepting, rejecting, or reviewing draft EAs.  This renders the requirement meaningless.  And it unravels the procedural safeguards the legislature established.

The HEPA rule does permit agencies to create exemptions from EAs for "[r]outine activities and ordinary functions[.]" Hawai'i Administrative Rules (HAR) § 11-200.1-16.  But an agency must make these exemptions case-by-case, after determining the use "do[es] not have the potential to individually or cumulatively adversely affect the environment more than negligibly[.]"  Id.

In the amended rules, MPC accepted draft EAs in place of final EAs for *all* SMA uses.  MCC § 12-202-12(c)(2).  HAR § 11-200.1-16 prevents this change.  What the HAR allows is narrower: "ordinary use" exceptions made case-by-case.

The rule also states that "particularly sensitive environments" may make an "exemption inapplicable."  HAR § 11-200.1-17.  If sensitivity makes an "exemption inapplicable" anywhere, the SMA is the last place to invite blanket exemptions.

The SMA is where procedural safeguards matter most.  SMAs contain some of Hawai'i's most fragile ecosystems.  Hollowing out those safeguards undermines the CZMA where it should be strongest.

Process is the heart of environmental review.  The CZMA does not let the SMA go without it.

The circuit court restored the final EA requirement.  That was the right call.

## V.

Through the three-step process, the legislature balanced efficiency against environmental protection.  Counties may streamline permitting.  But they may not erase assessment.  That is the line.

MPC's amended rules washed over it.  They created categorical exemptions that dismantle the mandatory

24

environmental review and shift it to the regulated.  This defies the CZMA, the legislature's design, and the constitutional duty Maui County holds as trustee.

Maui County's administrative burden is real.  But the solution is not to surrender.  The assessment role is the SMA's protection.  The legislature wrote that balance into the CZMA.

The circuit court got it right.

We affirm.


Brian A. Bilberry
for appellants

Lance D. Collins
(Bianca Isaki on the briefs)
for appellee

/s/ Vladimir P. Devens

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Paul B.K. Wong

